## Commonwealth *v.* Abdo, Appellant.

Argued March 15, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Herman Steerman,* for appellant.

*John F. Kane,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY ARNOLD, J., July 23, 1948:

Defendant appeals from a conviction on an indictment charging that he "unlawfully . . . [had] in his possession with intent to sell, lend, give away and to show, and offer to lend, give away, sell and to show, a number of obscene . . . indecent and disgusting motion picture films [numbering eight reels, described by their obscene titles]". Defendant's contention is that there was insufficient evidence to sustain the verdict, and assigns as error the overruling of his demurrer thereto. The judgment will be affirmed.

That the eight reels of motion pictures were obscene was admitted; indeed they were grossly so. Likewise the demurrer admits that the defendant possessed them. The allegation is merely that there was no sufficient evidence that he possessed them *with the intent* to show them, i. e., exhibit them.

Police officers entered defendant's dwelling by virtue of a search warrant for such obscene films, and the defendant was so informed. The defendant said: "There is nothing in here." A search of the first floor proved fruitless, but on the second floor in a closet over the stairway were found the eight reels of obscene picture films named in the indictment, each being inclosed in a separate can. With them was found a motion picture projector and a 16 millimeter motion picture camera. When the defendant was asked what was in the cans

(which later proved to contain the obscene films), he answered: "They are smoker films." When the officers examined the film in one of the cans the defendant then said: "They are all the same nature." When asked how he came to have the films "he couldn't [would not]" give any explanation.

Since the defendant falsely denied the possession of obscene films, and when this falsity was exposed would not explain his possession of them, an inference of guilt may be drawn: that he had them for one of the criminal purposes interdicted. If he was a mere bailee, or had them only for his own amusement, there would be no occasion for him to deny that he possessed them, since such possession would be non-criminal.

After the first can was opened the defendant volunteered that each film of each remaining can was of the "same nature", i. e., obscene. This is some evidence that he did not hold them as a mere bailee.

When the films were found the defendant stated: "They are smoker films." The jury had a right to infer from this statement that they were films which he intended to exhibit at smokers, i. e., gatherings of men. On appeal, defendant claimed that this expression meant that the films were of the *character* exhibited at smokers. But the defendant never said this, and the inference was that he made in his own behalf as favorable a statement as he could. He had full opportunity before the officers and before the jury to explain his statement. He cannot now complain because the jury ascribed a meaning which he himself did not deny.

It has been well said: "The designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his intention unless to an accomplice; hence the [specific] intent must in most cases be collected from the circumstances. These may sometimes prove deceptive; but when, without any forced construction, they speak the intention in a lan-

guage clear and intelligible, they may be relied on as the best evidence which the nature of the case will admit of": *State v. Wilson*, 1 American Decisions, 216, 217, 219.

. In cases of common law burglary, where the proof of breaking into a dwelling house in the nighttime is unchallenged, the question frequently arises whether there is sufficient evidence of the specific intent to commit a felony therein. It has long been the law that "an unexplained breaking and entering of a dwelling house in the nighttime is sufficient to sustain a verdict that the breaking and entering was done with intent to commit larceny": *State v. Woodruff* (Iowa), 225 N. W. 254, 255. In that case the defendant relied upon the familiar rule relative to circumstantial evidence that the facts proved must exclude every reasonable hypothesis except that of guilt, and argued that it was just as reasonable that defendant's intent was to commit some other public offense as to commit larceny. The court held, 257: ". . . when the *act* is proved by direct testimony, and all that remains to be found is the intent which accompanied the act, and which may be inferred from the circumstances accompanying the act, then this principle does not apply, and the true rule is that . . . the intent with which an act is committed being but a mental state of the party accused, direct proof of it is not required. . . . The reason for this rule is that experience teaches that in the great majority of cases of unlawful breaking and entering, the act done is with intent to steal. . . . There is no explanation of [defendant's] breaking and entering of said home. His claim, first made, of rooming there, was afterward . . . shown to be false." See also Underhill's Criminal Evidence, 4th ed. §627.

In the *Woodruff* case the defendant explained his act by falsely stating that he was a roomer in the house. In the instant case he falsely averred that he had no obscene films. In the cited case it was pointed out that a person does not *usually* enter a dwelling house in the nighttime with an *innocent* intent; and that the rational

probabilities of his intent were to be considered by the jury. In the instant case it is unlikely that the defendant had possession of eight cans of obscene motion picture films merely for his own amusement. The rational and probable purpose was that they were to be exhibited, and probably by a rental or sale. Likewise it is not probable that, if the defendant was merely a bailee of the films "for a friend," he would first have denied the possession thereof; or that he would have known the contents of each can.

In *Commonwealth v. Bell*, 13 Pa. Superior Ct. 576, the defendant was convicted of assault and battery with intent to ravish. The defendant, on a public street near an alley, grabbed the prosecuting witness by the shoulder. On appeal it was contended that the facts and circumstances shown were consistent equally with a specific intent on the part of the defendant (a) to commit simple assault and battery, (b) to commit robbery, (c) to commit murder, (d) to have sexual intercourse if the prosecutrix would consent, (e) to fondle her person. This Court sustained the conviction, saying page 579: "Criminal intent is usually hidden in the mind. It is not the subject of direct evidence except when avowed, and hence must be inferred from facts and circumstances . . . the previous conduct of the defendant in rudely staring the prosecutrix out of countenance, in following her and her companions from the opera house, in preceding her to the alley where he knew she would be compelled to pass on her way home after separating from her company, the manner of the assault, and following her after she had made her outcry,—all these facts were legitimate evidence of the intent and were fairly submitted to the jury."

The sum total of the evidence from which the jury was permitted to find that the intention of the defendant was to ravish, and not to commit one of the other acts above outlined, was that the defendant: (1) followed the prosecuting witness and her companions along the street;

(2) grabbed her by the shoulder; (3) at various times had gazed at her rudely while she was on the street and she turned her face away from him on account of his gazing.

The instant case is stronger than the *Bell* case, and much stronger than the various burglary cases. This defendant was guilty beyond any reasonable doubt. Defendants who neither explain nor deny their own statements cannot, on appeal, successfully complain that the jurors took their words and their acts in the wrong sense, when the defendants did not set them right.

The assignments of error are overruled, the judgment of the court below is affirmed, and defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.

RENO and Ross, JJ., dissent.