397 A.2d 818

COMMONWEALTH of Pennsylvania

v.

**Russell MADISON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Decided Feb. 9, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

Appellant was tried by a judge sitting without a jury and was convicted of attempted burglary and tampering with a witness. Post-verdict motions were denied and appellant was sentenced to concurrent sentences of six months to three years in prison. The sole issue on this appeal is whether the evidence was sufficient to sustain the convictions.

In testing the sufficiency of evidence, we proceed in several steps. First, we accept as true all the evidence upon

which the finder of fact could properly have reached its verdict. Next, we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams*, 468 Pa. 357, 365, 362 A.2d 244, 248 (1976); *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973). This inquiry is bounded by two poles. On the one hand, the Commonwealth "does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence." *Commonwealth v. Jacobs*, 247 Pa. Super. 373, 372 A.2d 873 (1977); *Commonwealth v. Larkins*, 235 Pa.Super. 19, 341 A.2d 204 (1975). On the other hand, guilt must be proved; mere conjecture or surmise is not sufficient. *Commonwealth v. Moore*, 226 Pa.Super. 32, 311 A.2d 704 (1973).

## I. The Conviction For Attempted Burglary

On June 7, 1976, at approximately 6:00 p. m., the complainant was taking a shower when she heard someone knocking at her front door. She did not respond. About five minutes later, while dressing in her bedroom, the complainant heard directly beneath her the sound of breaking glass. She looked out of the bedroom window and saw appellant kick in her basement window and then bend down by it. When she knocked on her window and called out to appellant, he looked up, saw her at the window, and ran away. The complainant immediately telephoned the police, who apprehended appellant one and one-half blocks away; he had blood on his trousers.

Attempted burglary is a crime recognized in this Commonwealth. *See Commonwealth v. Corbin*, 251 Pa.Super. 512, 380 A.2d 897 (1977); *see also Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973); *Commonwealth v. Moore, su-*

*pra.* The Crimes Code defines both burglary and attempt. "A person is guilty of burglary if he enters a building . . with intent to commit a crime therein." The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 3502(a). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id.* § 901(a).

The charge in this case was attempted burglary with the intent to commit theft. Therefore, the Commonwealth was required to prove that appellant attempted entry with the intent to commit theft. *See Commonwealth v. Simione,* 447 Pa. 473, 291 A.2d 764 (1972); *Commonwealth v. Lambert,* 226 Pa.Super. 41, 313 A.2d 300 (1973). Thus, proof of two distinct intents was necessary: the intent to enter the house, and the intent to commit theft after entering. *See Commonwealth v. Jacobs, supra; Commonwealth v. Larkins, supra; Commonwealth v. McLaughlin,* 230 Pa.Super. 420, 326 A.2d 474 (1974).

A. Was The Evidence Sufficient to Prove That Appellant Intended to Enter the House?

Appellant argues that the evidence was sufficient only to prove criminal mischief. It is true that the acts of breaking a window and running away are consistent with an intent to commit criminal mischief. However, the additional evidence that appellant was seen bending down by the window and ran away only after he was discovered at the window indicates that he intended more than merely to break the window; it supports the reasonable inference that he intended to enter. If appellant's only purpose had been to break the window, he would have had no reason to bend down by it; also he would have had no reason to remain on the scene, but would more likely have fled at once instead of only upon discovery.

The Supreme Court's decision in *Commonwealth v. Stanley,* 453 Pa. 467, 309 A.2d 408 (1973), does not require a different result. There the defendant, seen by the police near a group of stores at approximately 10:00 p. m., walked

past a nearby construction site and dropped a screwdriver on the ground. Further investigation revealed that a screen to one of the store windows had been partially removed. While the opening in the screen was sufficient to enable a person to enter, the window behind the screen had been boarded up, and there was no evidence that the boarding had been tampered with. The Supreme Court reversed the conviction for attempted burglary, holding that the evidence was insufficient to connect the defendant with removal of the screen, for he was not seen in the act of removing the screen, or even near the screen; he was only seen near the store. The Court went on to state:

> Even if we were to accept that the evidence was sufficient to prove that appellant did in fact pry the screen open, there is serious question whether this record supports the requisite intent necessary for attempted burglary. The crime of attempted burglary requires that the attempted entry be accompanied with an intent to commit a felony within. . . . Here it was apparent prior to the dislodging of the screen that entry could not be gained without removing the boarding from the window. The evidence is uncontradicted that the boarding had not been tampered with and there was a complete absence of any evidence of interruption by any outside circumstances. These facts strongly suggest that there may not have been an intention to enter and commit a felony therein but rather that the intent may have been just the malicious destruction of the screen.

*Commonwealth v. Stanley, supra,* 453 Pa. at 473, 309 A.2d at 412.[1]

In the case at bar, in contrast to the situation in *Commonwealth v. Stanley, supra,* appellant was seen breaking the window, and there was evidence showing that entry could be

1. At the time of the conviction in *Commonwealth v. Stanley, supra,* burglary was defined as entry with the intent to commit a "felony." Act of June 24, 1939, P.L. 872, § 1107, 18 P.S. § 5107. As noted above, under the Crimes Code burglary is defined as entry with the intent to commit a "crime." Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 3502(a).

obtained through the window; it was one and one-half feet high and there was no boarding behind it. Moreover, in this case the complainant's knocking at her window and calling out to appellant interrupted appellant, who reacted by running away.

B. Was the Evidence Sufficient to Prove That Appellant Intended to Commit Theft After Entering the House?

■ Since the Crimes Code defines burglary as entry with the intent to commit a crime—any crime—the Commonwealth is not required to specify in the indictment or information what crime the accused allegedly intended to commit. *See Commonwealth v. Wilks*, 250 Pa.Super. 182, 378 A.2d 887 (1977). As has been noted, however, in this case the Commonwealth did specify the crime, charging appellant with the intent to commit theft; it was therefore required to prove the intent for that specific crime. *See Commonwealth v. Jacobs, supra; Commonwealth v. Lambert, supra.*

The Commonwealth argues that it proved the intent to commit theft on the basis of the complainant's testimony that someone knocked at her front door some five to ten minutes before her basement window was broken. The reasonable inference from this evidence, the Commonwealth argues, is that it was appellant who knocked. On the basis of this inference, the Commonwealth then argues that when no one answered, appellant thought no one was at home, went to the basement window, and kicked it in so that he could enter the house. Theft was the obvious intent, according to the Commonwealth, because any other crime would have required a human victim, and here, by knocking, appellant had ascertained that no one was in the house.

■■ This argument cannot be accepted, for while we agree with the Commonwealth that evidence that appellant knew the house was empty would be relevant to a finding of his intent, here there is no basis for a reasonable inference that appellant was the one who knocked. No one testified to having seen appellant at the front door, nor was there testimony of fingerprints or other indicia that he had been

near the door. The Commonwealth would have us infer from the interval of time between the knocking and the window breaking—five to ten minutes—that both acts were done by the same person. In some cases such an inference might be reasonable, for example, if the evidence was that the incident had occurred late at night and the accused was the only one seen on the street. Here, however, the incident took place at 6:00 p. m. on a summer evening on a residential street in Philadelphia. In such circumstances, many persons besides appellant could have been the unanswered caller at the front door; an inference that appellant was the caller is no more than conjecture or surmise. *See Commonwealth v. Larkins, supra* (inference that defendant entered laundromat held conjecture).

■ The lower court accepted the Commonwealth's argument that a reasonable inference could be drawn that appellant knocked at the front door. Although this was error, we may affirm the court's decision if a proper basis for it appears. *See Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976); *Commonwealth v. Ditmore,* 242 Pa.Super. 248, 363 A.2d 1253 (1976). The question, therefore, becomes this: Although the evidence was insufficient to show who knocked at the front door, was it nevertheless sufficient to support the conviction?

■ Generally, intent must be inferred solely from the defendant's conduct and statements at the time of the incident. *See Commonwealth v. Simmons,* 233 Pa.Super. 547, 336 A.2d 624 (1975). In some cases the defendant's intent is so manifest that the question of sufficiency is easily resolved. This will be so where the defendant tells the victim what he intends to do, or where the evidence overwhelmingly points to one crime to the exclusion of all others, as, for instance, entry with possession of incendiary devices would point to arson. *See e. g. Commonwealth v. Wilks, supra* (defendant broke into victim's apartment, said he would kill her, and then attacked her); *Commonwealth v. Atkins,* 232 Pa.Super. 206, 335 A.2d 375 (1975) (defendant attempted to enter room in fraternity house; he had previ-

ously entered other rooms in same house on same night and had stuffed goods from other rooms in suitcase; held, sufficient to show intent to commit theft). In most cases, however, the determination of intent must be derived from a close scrutiny of all the facts and circumstances.[2] The present case is such a case.

Sometimes some of the evidence indicates a specific intent to commit theft but an inference of such intent nevertheless cannot be sustained because of other clearly contrary evidence. Thus in *Commonwealth v. Freeman,* 225 Pa.Super. 396, 313 A.2d 770 (1973), although the police saw the defendant enter an apartment building, the inference that he intended to commit theft was contradicted by evidence that he left the building empty handed even though there were articles of some value that he could have easily removed from the room he had entered. Similarly in *Commonwealth v. Muniem,* 225 Pa.Super. 311, 303 A.2d 528 (1973), this court held the evidence of burglary insufficient where the defendant left an abandoned warehouse empty handed and stayed on the scene to cooperate with the police. *See also Commonwealth v. Ellis,* 349 Pa. 402, 37 A.2d 504 (1944) (defendant's actions in entering house when he knew owner was no longer there and in leaving house empty handed negate intent to enter with intent to commit rape or theft); *Commonwealth v. McLaughlin, supra* (since defendant left premises without either attacking owner or stealing anything, although he had ample opportunity to do so, evidence did not

2. Thus in *Commonwealth v. Abdo,* 162 Pa.Super. 622, 60 A.2d 419 (1948) this court stated:

The designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his intention unless to an accomplice; hence the [specific] intent must in most cases be collected from the circumstances. These may sometimes prove deceptive; but when, without any forced construction, they speak the intention in a language clear and intelligible, they may be relied on as the best evidence which the nature of the case will admit of

*Id.,* 162 Pa.Super. at 624–25, 60 A.2d at 420–21, *quoting, State v. Wilson,* 1 American Decisions 216, 217, 219.

show the intent to commit rape or larceny as charged).[3] Cases such as these are based in part on the general principle that evidence of the mere presence of the defendant at the scene is insufficient to support a conviction. *See Commonwealth v. Larkins, supra* (evidence that defendant was near burglarized laundromat held insufficient).

None of these cases helps appellant, for here the evidence of appellant's own conduct does not contradict an inference of intent to commit theft. When there is no such contradiction, the reasonableness of an inference of the specific intent to commit theft will usually depend on several factors. One factor may be the type of building that is entered. If the incident involves entry or attempted entry into a commercial establishment after business hours, it is likely that the intent to commit theft may reasonably be inferred. Thus in *Commonwealth v. Corbin, supra*, although the specific issue of intent was not fully addressed, this court upheld the conviction for attempted burglary with the intent to commit theft where the evidence was that the defendants had used burglary tools in an attempt to break into the back door of a pharmacy at night. In some cases, however, because of the type of building involved, the entry will not support an inference of the intent to commit theft because the defendant would have no reasonable belief that there was anything in the building worth stealing, or that he was capable of stealing without special tools. Thus in *Commonwealth v. Jacobs, supra*, this court reversed a conviction for attempted burglary with the intent to commit theft where the defendant had been caught after entering a recently vacated apartment that contained only a refrigerator, a stove, and a sink. *See Commonwealth v. Brown*, 226 Pa.Super. 172, 313 A.2d 290 (1973) (SPAETH, J. dissenting) (vacant house; were tools appropriate to steal copper tubing

3. In *Commonwealth v. Procopio*, 200 Pa.Super. 226, 188 A.2d 773 (1963), the conviction for burglary with the intent to commit larceny was upheld even though the defendant left the building empty-handed. The evidence showed that a dial had been removed from a safe while the defendant was in the building. *See Commonwealth v. Hooks*, 450 Pa. 562, 301 A.2d 827 (1973).

as alleged?). Another factor may be whether the evidence indicates that the defendant thought the building was unoccupied at the time of the entry. If it appears he did, that may indicate an intent to commit theft, as other crimes would require the presence of a human victim. Thus where the defendant enters and then suddenly departs upon discovering that the house is occupied, this court has held the evidence sufficient to support an inference of the intent to commit theft. For example, in *Commonwealth v. Shannon*, 244 Pa.Super. 322, 368 A.2d 742 (1976), this court upheld a conviction for attempted burglary based on the following fact. A home-owner saw the defendant ring her door bell. When she did not answer, the defendant walked away. He later returned, and still receiving no answer, started to open the door. When the owner knocked at her window, the defendant stopped suddenly, dropped something metallic, and ran away.[4] Earlier, in *Commonwealth v. DelMarmol*, 206 Pa.Super. 512, 214 A.2d 264 (1965), this court upheld a conviction for burglary with the intent to commit larceny where the defendants abandoned their entry only because they discovered that the residence was occupied. The resident was sitting in her living room when she heard a noise at her front door. As she approached the door to investigate, it burst open from the outside and one of the defendants was crouched behind it. When the defendant saw her he said "Oh", and ran away. In affirming, this court cited the evidence that when defendants "opened the door and found the apartment occupied, they hurriedly left" as supporting the inference that the defendants intended to commit larceny. *Id.*, 206 Pa.Super. at 516, 214 A.2d at 266. These decisions, it should be noted, do not undermine the established rule that mere evidence of flight is not sufficient to support a conviction;[5] they represent instead a recogni-

4. Thus, if the Commonwealth had been able to prove here that appellant was the person who knocked at the door, the situation presented would be identical to that presented in *Commonwealth v. Shannon, supra.*

5. *See Commonwealth v. Goodman*, 465 Pa. 367, 350 A.2d 810 (1976); *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973).

tion that where the reason for flight is the discovery that the premises are occupied, the jury may infer that the defendant thought the premises unoccupied and intended theft, since one intending theft does not need a human victim and in fact may avoid carrying out his intended theft where someone's presence would make the theft and subsequent escape more difficult.

■ From this examination of the cases it may be seen that the evidence here was sufficient to support the inference that appellant intended to commit theft. The building in question was not a vacant building, or one from which items could be taken only with special tools. It was a residence likely to contain articles of value. In addition, the evidence indicates that appellant thought the residence was unoccupied. In this regard, the fact that appellant attempted to enter through the basement is significant, for the basement of a house is the part least likely to be occupied. Appellant's choice of a somewhat noisy method of entry—breaking the window—also indicates that he thought no one was in the basement, or in the house, to hear the glass breaking. ·Finally, the evidence that appellant left the scene only when he discovered from the complainant's interruption of his activity that the house was occupied is significant; it presents a situation similar to that in *Commonwealth v. DelMarmol, supra.*

## II.   The Conviction for Tampering With A Witness

The Commonwealth offered the following evidence on the charge of tampering with a witness. The day after his arrest, appellant approached the complainant, who was sitting on her front porch. The following conversation took place:

(Complainant)   .   .   .   He said, "are you sure it was me", and I said, "yes", and then he went on to say, "you could be giving me a lot of hard times. Do you want me to pay for the window?"

I said, "no. That is not the point. It is the fact that you were trying to break into my house", and then finally,

when he saw that he could not change my mind, he said, "I sure hope you don't have no problems", and walked away.

(N.T. 11)

Section 4907 of the Crimes Code provides:

§ 4907.   Tampering with witnesses and informants.

(a) Offense defined.—A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to:

(1) testify or inform falsely;

(2) withhold any testimony, information, document or thing except on advice of counsel;

(3) elude legal process summoning him to testify or supply evidence;  or

(4) absent himself from any proceeding or investigation to which he has been legally summoned.

(b) Grading.—The offense is a felony of the third degree if the actor employs force, deception, threat or offer of pecuniary benefit.   Otherwise it is a misdemeanor of the second degree.   The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334;  18 Pa.C.S. § 4907.

Since appellant was convicted of tampering with the complainant by the use of a threat, his offense was a felony of the third degree.

In arguing that the evidence was insufficient to sustain the conviction for tampering, appellant contends that his purpose in visiting the complainant was a good faith attempt to settle their differences.   In support of this contention appellant relies on the evidence that he offered to pay for the broken window.   If appellant had offered to pay for the window and nothing more, his argument would have some force.   However, when the complainant refused his offer, he went on to say, "I sure hope you don't have no problems".   The complainant interpreted this as a threat, and while of course her interpretation shows only what was in her mind, not what was in appellant's, *see Commonwealth*

220

*v. Patterson,* 257 Pa.Super. 206, 390 A.2d 784 (1978), the fact finder could reasonably infer that appellant did not mean his words to be understood as stating a sincere hope on his part that the complainant would have no trouble, but rather as making a threat, that if she proceeded with the charges, she would have trouble. Such a threat constitutes an attempt "to induce or otherwise cause a witness . . . to . . withhold . . . testimony . . . ." 18 Pa.C.S. § 4907.

Affirmed.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.