## Commonwealth v. Scott

*Robert R. Reber, Assistant District Attorney,* for Commonwealth.

*P. David Maynard* and *William F. Ochs, Jr.,* for defendants.

SAYLOR, *J.,* March 11, 1981—Defendants, Kevin Scott and Lorenzo Franklin, following a joint trial before a jury were found guilty of burglary[1],

---

1. Crimes Code, 18 Pa.C.S.A. §3502(a).

criminal trespass[2], and criminal conspiracy[3] to commit burglary and criminal trespass. Both defendants filed motions for a new trial and/or arrest of judgment based on six identical grounds: (1) the verdict is contrary to the law; (2) the verdict is contrary to the evidence; (3) the verdict is contrary to the weight of the evidence; (4) the evidence was insufficient to sustain the verdict of the jury; (5) the court erred in charging the jury that the defendant intended to commit a theft in the premises; and (6) the court erred in charging the jury on the elements of attempted theft.

Because conflicting testimony was adduced at trial, we shall set down the facts in the order they were offered at trial.

On the afternoon of July 29, 1980 defendants, along with a third individual identified as John Alvarez, were discovered inside a building located at 407 North Front Street, Reading, Berks County, Pa. Gerald Hertz, president of the corporation that owned the building, Hertz Supply Co., Inc., testified that the building is operated as a warehouse for the storage of heating and plumbing supplies. No employes worked at the building and it was subject to a considerable amount of vandalism. Prior to July 29, 1980 the building's plate glass windows had been broken and then twice boarded over. The windows were last boarded over approximately one month prior to July 29, 1980. The property was mortgaged and insured, and property taxes had been paid. Mr. Hertz did not give defendants or John Alvarez permission to enter the building.

James Witchell, who conducts a business at 405

---

2. Id., §3503(a)(1)(i).

3. Id., §903(a)(1).

North Front Street in Reading, Berks County, Pa., testified that Mr. Hertz had requested him to look after the Hertz Supply Co. property and entrusted him with a set of keys for that purpose. Mr. Witchell checked the Hertz Supply Co. premises at least once a day. On the afternoon of July 29, 1980 Sgt. Charles Broad of the Reading Police Department asked Mr. Witchell to accompany him to the Hertz Supply Co. building at 407 North Front Street. Mr. Witchell entered the building by stepping through an opening which formerly housed a plate glass window and which one month before had been boarded over. The board was now missing and had been missing for most of the month. Upon entering, Mr. Witchell observed three persons. One person was on a ladder and was in the process of unscrewing from a wall the operating mechanism of an electric garage door opener. Two other individuals were holding a box that controlled the operating mechanism.

Mr. Witchell identified those two individuals as defendants, Kevin Scott and Lorenzo Franklin. Mr. Witchell had been in the building at 9 a.m. that day, and at that time the box, which he later observed in the hands of defendants, was attached to the wall by screws. After Mr. Witchell entered the building the two defendants exited through the empty window enclosure. No other persons were in the building when Mr. Witchell discovered defendants other than the third individual on the ladder. Mr. Witchell never gave anyone permission to enter the building.

Sgt. Broad spoke with both defendants after they exited the building. He requested defendants' identity and asked them what they were doing in the building. Kevin Scott responded that Franklin and he were salvaging parts of the building on behalf of

the Neighborhood Housing Services and that the executive director of Neighborhood Housing Services, Wayne Knox, had given them permission to do this. Franklin agreed with Scott, stating, "That's right."

Sgt. Broad did not place defendants under arrest at that time but allowed them to depart. Upon entering the building, he observed the control box to the electric garage opener lying on the floor. Sgt. Broad filed criminal complaints against defendants on August 1, 1980.

Wayne Knox testified on behalf of the prosecution. He held the position of executive director of Neighborhood Housing Services in July, 1980. He knows both defendants but they were not working for him on July 29, 1980 or on any other date.

Defendants chose to testify on their own behalf. Kevin Scott testified that on July 29, 1980 he was at a playground across from the Hertz Supply Co. building at 407 North Front Street and was in the company of Lorenzo Franklin and John Alvarez.

Defendants and John Alvarez observed a juvenile enter the Hertz Supply Co. building. They then determined to enter the building in order to extricate the juvenile from possible dangers within the structure. The juvenile ran out after they entered the building. They did not handle a control box for the garage door and had no intent to remove anything from the building. They had been in the building approximately three minutes when they were confronted by Sgt. Broad. Scott knows Wayne Knox but did not tell Broad that they were working for Knox. Lorenzo Franklin corroborated Kevin Scott's testimony in every respect. He added that he thought the building was abandoned.

Defendants contend the verdict is contrary to law.

For the verdict to be against the law, it must appear that the verdict is not consistent with any of the alternatives properly left to the jury under the charge of the court: Com. v. Ashford, 227 Pa. Superior Ct. 351, 322 A. 2d 722 (1974). Clearly, verdicts of guilty were all alternatives properly left to the jury under the charge of the court and we will not set aside the verdicts on this basis.

Defendants also assert that the verdict is contrary to the evidence or the weight of the evidence. Whether a verdict is contrary to the evidence or weight of the evidence so as to require a new trial, is within the sound discretion of the trial court: Com. v. Chapman, 255 Pa. Superior Ct. 265, 386 A. 2d 994 (1978). Where the evidence is conflicting the credibility of a witness is solely for the jury and if the jury's finding is supported by the record, its finding may not be disturbed: Com. v. Zapata, 447 Pa. 322, 290 A. 2d 114 (1972). We find the evidence is conflicting and the question was one of credibility. The jury chose to believe the evidence of the Commonwealth and we do not find evidence on behalf of defendant sufficient to bring us to a conclusion that the verdict was so shocking to the sense of justice that it must be overturned.

Upon motion for arrest of judgment based on insufficiency of the evidence, the test for sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the jury to find every element of the crime beyond the reasonable doubt: e.g., Com. v. Bastone, 466 Pa. 548, 353 A. 2d 827 (1976); Com. v. Robson, 461 Pa. 615, 337 A. 2d 573 (1975). The Commonwealth is not required to es-

tablish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence: Com. v. Jacobs, 247 Pa. Superior Ct. 373, 372 A. 2d 873 (1977). Guilt must be proved, however; mere conjecture or surmise is not sufficient: Com. v. Madison, 263 Pa. Superior Ct. 206, 397 A. 2d 818 (1979); Com. v. Moore, 226 Pa. Superior Ct. 32, 311 A. 2d 704 (1973). Defendants challenge the sufficiency of the evidence, contending that the Commonwealth failed to prove beyond a reasonable doubt that defendants had the specific intent to commit a crime within the premises.

Burglary requires a specific intent to commit a crime within the entered structure: Com. v. Bable, 248 Pa. Superior Ct. 496, 375 A. 2d 350 (1977). Specific intent to do an act cannot be inferred solely from the commission of the act: Com. v. Crowson, 267 Pa. Superior Ct. 46, 405 A. 2d 1295 (1979); Com. v. Nutter, 256 Pa. Superior Ct. 111, 389 A. 2d 626 (1978). Intent must be inferred from defendant's conduct and statements at the time of the incident as derived from a close scrutiny of all the facts and circumstances: Com. v. Madison, supra; Com. v. Nutter, supra. The fact that the accused commits a crime within the structure is, without more, insufficient to prove his intent to commit a crime at the time of the entry: Com. v. Crowson, supra.

We find more evidence of intent to commit a crime upon entry does exist than the mere fact that defendants committed a crime within the structure. Sgt. Broad testified that defendants told him that they were working for Neighborhood Housing Services when in fact they were not. Defendants also told Sgt. Broad that they entered the building for the purpose of "salvaging" parts. When we ac-

cept as true all the evidence upon which the finder of fact could properly have reached its verdict and give the Commonwealth the benefit of all reasonable inferences arising from that evidence, we conclude that the evidence and inferences arising from it were sufficient to prove beyond a reasonable doubt that entry occurred with a specific intent to commit a crime within.

Finally, defendants contend that the court erred in charging the jury that the crime defendants intended to commit within the building upon entering was theft and charging the jury on the elements of attempted theft on the grounds that the district attorney's informations did not specify theft as the crime defendants intended to commit within the building. The informations charge that each defendant entered the Hertz Supply Co. building without license or privilege "with intent to commit a crime therein, in violation of Section 3502(a) [burglary] of the Crimes Code. . . ." Defendants assert that they had no opportunity to defend and had no notice as to the crimes of theft and attempt to commit theft.

Defendants do not claim that the informations were defective. They recognize that "there is no requirement that the Commonwealth specify what crime a defendant intended to commit" upon entry when the information charges the crime of burglary: Com. v. Wilks, 250 Pa. Superior Ct. 182, 378 A. 2d 887 (1977); Com. v. Madison, supra. Defendants suggest that once the informations fail to specify what crime a defendant intended to commit, no instruction can be given in this regard.

Due process requires that a defendant have notice of the charges against him so that he may have an opportunity to defend: Faretta v. Califor-

nia, 422 U.S. 806, 818 (1975); Argersinger v. Hamlin, 407 U.S. 25, 28 (1972). The indictment or information supplies the essential due process requirement of notice: Russell v. United States, 369 U.S. 749, 763 (1962). In all court cases tried on an information, the issues at trial shall be defined by such information: Pa.R.Crim.P. 225(d).

We do not believe that because the court charged the jury that the crime defendants intended to commit upon entry was theft and therefore instructed them on the elements of attempt to commit theft, the court violated the principles noted above. First, the informations charge that defendants intended to commit a crime within the structure. "It is axiomatic that in criminal trials the proof offered by the Commonwealth must measure up to the charge made in the indictment." Com. v. Jacobs, supra, 247 Pa. Superior Ct. 377, 372 A. 2d 875. Thus, the Commonwealth was *required* to prove that defendants intended to commit a crime within the structure. The Commonwealth, therefore, sought to prove defendants intended to commit a theft. Defendants argue that it was error for the court to then further elucidate to the jury on the theft aspect of the incident.

"The duty of a trial judge has clearly been stated as being to clarify the issues so that the jury may comprehend the questions they are to decide. . . ." Com. v. Zeger, 200 Pa. Superior Ct. 92, 186 A. 2d 922, 925 (1962); Com. v. Davison, 243 Pa. Superior Ct. 12, 20, 364 A. 2d 425, 429 (1976). We cannot allow the jury to speculate on what facts amount to what crime or what the elements of that crime are. The Commonwealth was required to prove a crime and the court was required to clearly instruct the jury as to the nature of that crime.

Second, the criminal complaint filed against each defendant specifically charges that each defendant entered "with the intent to commit a crime of theft by unlawful taking." The informations placed defendants on notice that they were required to defend as to a crime intended to be committed within the building. The criminal complaint supplied the identity of the specific crime.

Last, an absurd result would ensue if we upheld defendants' contention. If the court was prohibited in a situation such as this from instructing the jury as to the precise nature of the crime defendants intended to commit upon entry, not only is it possible the jury would speculate on the nature of the crime, but they could also fail to make a finding on an essential element of the offense. Both of these possibilities amount to grounds for reversal of a conviction. We cannot allow a defendant the benefit of a rule that operates as a "Catch-22" against the Commonwealth.

Accordingly, we enter the following

## ORDER

March 11, 1981, on consideration of defendant Kevin Scott's motion for a new trial and/or arrest of judgment, and defendant Lorenzo Franklin's motion for a new trial and/or arrest of judgment, and the foregoing opinion, it is ordered and decreed that the above motions are denied.