457 A.2d 520

**COMMONWEALTH of Pennsylvania,**

**v.**

**Edgar Clinton WILTROUT, Appellant.**

Superior Court of Pennsylvania.

Submitted May 19, 1982.

Filed Feb. 25, 1983.

Petition for Allowance of Appeal Denied July 25, 1983.

116

Dante G. Bertani, Public Defender, Greensburg, for appellant.

Margaret E. Picking, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before HESTER, McEWEN and JOHNSON, JJ.

HESTER, Judge:

On April 18, 1980, the appellant, Edgar Clinton Wiltrout returned from work to his trailer home in Westmoreland County in the early evening with plans to meet friends at

the Foothills Tavern. Having bathed, and while dressing, his friend, Marion John Steppits arrived to accompany him.

When the appellant was prepared to leave his home, he instructed Steppits to remain until he returned from an errand. The appellant thereafter walked alone to CB City on Route 30, some 500 yards from his trailer home. CB City was located on Route 30, several hundred yards from the Beatty Crossroads. It was a retail enterprise owned and operated by Joseph Poponick; the building itself was owned by the appellant's brother, Donald Wiltrout, and leased to Mr. Poponick.

Under the pretense of investigating an unauthorized person's presence on the premises of CB City, the appellant entered the building through the rear wall after prying open a plywood panel. This occurred following the close of business for the day. A security alarm system summoned Trooper Fred Street of the Pennsylvania State Police to the scene. Upon his arrival, Trooper Street detected inside movement through the glass front doors; thereafter, he skirted the outside and observed the loosened plywood rear panel. A leather valise and hammer were found next to the plywood panel.

Trooper Street returned to the front of the building where he was accosted by the store owner's mother and Trooper John Mosser. They were both instructed to watch the front of the building while Trooper Street returned to the outside rear portion.

Upon arriving a second time at the point of entry, Trooper Street observed the outside plywood panel being pushed outwardly by the appellant attempting to exit surreptitiously. When Trooper Street identified himself and cautioned the appellant to continue exiting with his hands visibly in front of him, the panel closed and the appellant retreated to the inside.

Trooper Street returned to the front and instructed Trooper Mosser to continue his vigil of the front entrance. Trooper Mark Griffin, the last enforcement officer to ar-

rive, accompanied Street through the rear panel into the building. Once inside, they immediately encountered a group of boxes scattered on the floor. The appellant was not discovered in either the storage or showroom areas. A piece of the suspended ceiling in the showroom was lying on the floor thereby alerting the troopers to the possibility that the appellant was concealing himself above the ceiling; however, a search of that space proved fruitless. The appellant was eventually found partially concealed in the restroom's suspended ceiling with only his legs and feet visible. He was pulled to the floor and detained by Trooper Mosser while Troopers Street and Griffin checked for any other intruders. No one was found.

Appellant was arrested and charged with burglary. A jury trial commenced on November 10, 1980 and a verdict of guilty was returned. Motions for a new trial and in arrest of judgment were filed, but subsequently denied. On September 1, 1981, the appellant was sentenced to a term of imprisonment of not less than four (4) nor more than ten (10) years. His motion for reconsideration of the sentence was denied and this appeal followed.

Appellant's first contention is that the trial court erred in admitting into evidence a photograph of the valise and hammer. He alleges that a foundation for the demonstrative evidence was never laid and that such evidence was irrelevant. We disagree with both allegations.

The photograph of the valise and hammer was designated as Commonwealth's exhibit # 5. Trooper Carl Schweinsburg, a records and identification officer with the Pennsylvania State Police, took this particular photograph, along with others. He testified to having taken photograph exhibit # 5 on April 18, 1980 and to recognizing his handwriting setting forth the incident number, date and initials on the back. Furthermore, Trooper Street, while occupying the witness stand, identified the satchel and hammer depicted in the photograph as items found beside the plywood panel that was ripped from the rear wall of CB City. This

testimony satisfied the prerequisites for admitting photographs as evidence set for in *Adamczuk et al. v. Holloway, et al.*, 338 Pa. 263, 13 A.2d 2 (1940). Where a witness is familiar with the items photographed and is competent to testify that they are accurately depicted therein, then, if relevant, the photograph should be admitted. *Adamczuk, et al.*, supra.

The determination of the relevance of evidence is accomplished through a conjunctive test. First, the evidence must affect a matter in issue; secondly, it must render the desired deduction more probable than it would be without the evidence. *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981); *Commonwealth v. Stevenson*, 280 Pa.Super. 293, 421 A.2d 729 (1980). The prime inquiry confronting the lower court was whether the appellant entered CB City with the intent to commit the crime of theft of movable property. The appellant insists that he entered the building for the alleged purpose of apprehending a person whom he suspected of entering the building. Moreover, the appellant never disclosed to anyone another intention. Consequently, the issue of intent was determinable only through the use of circumstantial evidence. The satchel raises the inference that the intruder intended to carry citizens' band radio equipment from the premises. While assisting the jury in comprehending the shape, size, texture and durability of the satchel, the photograph also reflected its capacity to carry such items. Accordingly, it renders the inference of the intent to commit theft more probable. We conclude, therefore, that it satisfies the two-prong relevancy test. Certainly, at the very least, we cannot conclude that the lower court abused its discretion in admitting the photograph. *Commonwealth v. Thornton*, supra, and *Stevenson*, supra.

The appellant argues next that the trial judge erred in refusing two points of charge submitted by him. The points of charge submitted, but refused, are as follows:

1. The jury must be satisfied beyond a reasonable doubt that Mr. Wiltrout knew the nature of his conduct and it was a conscious object to engage in this conduct, i.e., burglary at the time of entry. 18 P.S. § 302 (sic).

2. If the jury believes beyond a reasonable doubt that Mr. Wiltrout possessed the specific intent to commit a crime other than theft even merely mischief, at the time of entry, and that crime was not proven by the Commonwealth, the jury must aquit Mr. Wiltrout. *Commonwealth v. Madison,* 263 Pa.Super. 206, 397 A.2d 818 (1979).

It is the appellant's position that the above two submitted points for charge raised the subject of intent and should have spurred the court to give a thorough jury instruction on the critical role of intent in a burglary offense. The appellant is specifically critical of the court's "analysis of the possible evidentiary methods of showing specific intent, without elucidating one iota the main point, the elements of explanation of what the legal and common sense understanding of what constitutes specific intent to commit a crime, as the same is required to be proven as the basis for the finding of a burglary by a jury." This quoted passage leaves us somewhat unguided by the appellant's precise complaint here; we will, however, review the charge of intent for any vagueness and ambiguity.

The court initially instructed the jury on the element of intent accordingly:

"In this case, he's not charged with the crime of theft. He's charged with the crime of burglary, which is entering a building with the intention of—state of mind—intention of committing the crime of theft.

Now, when we talk about intention, of course, we're talking about a mental element. Ordinarily it is not possible to prove intent by direct evidence unless, of course, the Defendant makes a statement about the state of mind. The Defendant took the stand and testified as to what his state of mind was. That's direct evidence.

On the other hand, intention can be proven by circumstantial evidence. By circumstantial evidence I mean inferences that may reasonably be drawn from all the facts and circumstances including the Defendant's acts and conduct, which have been shown by the evidence in the case. Thus, you may conclude that the Defendant intended to commit the crime based solely on the crime of theft, when he entered the building based solely upon circumstantial evidence alone only if the circumstantial evidence is strong enough to convince you that the Commonwealth has established this intent beyond a reasonable doubt."

While deliberating, the jury requested further explanation of the element of intent and the Court responded with the following charge:

"Now, intention. Ordinarily, it's not possible to prove intention by direct evidence unless, of course, there's evidence that the Defendant made a statement concerning his state of mind. However, intention, like any other matter, may be proved by circumstantial evidence. That is by inferences that reasonably may be drawn from all the facts and circumstances including the Defendant's acts and his conduct, which have been shown by the evidence in the case. Thus, you may conclude that the Defendant intended to commit the crime of theft when he entered the building based on circumstantial evidence alone, but only if the circumstantial evidence is strong enough to convince you that the Commonwealth has established this intention beyond a reasonable doubt. Now, we have conflicting evidence of that. Mr. Wiltrout took the witness stand and he testified that his intention was to catch the thief or prowler. But you can also or you may, you don't have to, but you may infer from the surrounding circumstances circumstantially what was his intention. Facts and circumstances can show one's intents as well as direct evidence. But in order to convict of the crime of burglary, not only does there have to be the entry into the building, but that the entry was made

by a person with the intention of committing the crime of theft."

In another portion of the renewed charge the court said:
 "But again keep in mind the Commonwealth is not alleging here that the defendant committed the crime of theft. Rather they're alleging he entered the building with the intention of committing the crime of theft. Burglary is entry into a building with the intention, mental state of intention of committing a certain crime. In this case the Commonwealth claims the defendant was going to commit the crime of theft."

Burglary is committed when a person enters a building without authority with the specific intent to commit a crime therein. 18 Pa.C.S.A. § 3502(a). It is rationally deducible that two separate forms of intent are implicit in this statutory definition. First, there must be the intent to enter the building without authority. The appellant does not object to this portion of the intent charge presumably due to the fact that he admits his forced entry into the building. As the afore-quoted passages indicate, the court's charge on the entry into the building with the intent to commit a crime was complete and accurate. In accordance with decisional law, the court implicated that the specific intent to carry the charge of burglary can be inferred from the defendant's conduct, words and accompanying circumstances. *Commonwealth v. Jacob*, 247 Pa.Super. 373, 372 A.2d 873 (1977); *Commonwealth v. Freeman*, 225 Pa.Super. 396, 313 A.2d 770 (1973).

 Appellant cites *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979), as support for his submitted charge that where the jury believes the appellant committed a crime other than theft at the time of entry, and that crime was not proven by the prosecution, then the jury must acquit him. This is an incorrect recitation of the law in *Madison*, supra. The *Madison* court simply held that where the prosecution specifies the crime that the accused intended to commit at entry, then it must prove the intent for the specific crime. Our review of the record leads us to

conclude that there was enough circumstantial evidence here to sustain an intent to commit theft.

■ Lastly, the appellant finds error with his counsel's failure to object to the alleged improper designation of an assistant district attorney to initial and approve bills of information. The District Attorney of Westmoreland County filed a written Designation of Authority empowering his entire staff of assistant district attorneys to approve criminal charges. This particular bill reflected a rubber stamp facsimile of the District Attorney's signature followed by "ACG", an assistant district attorney's initials. The appellant assumes the position that only *specific* designations of authority are proper. None of the case law advanced by the appellant supports a requirement for a specific designation by name. So long as the designation, either general or specific is of record, an assistant district attorney's initials adjacent to his employer's stamped signature satisfy the promoted policy. The safeguard here is to insure that the specific charges are given due consideration by a qualified member of the prosecutor's staff so that bills receive more than cursory treatment and mere rubber stamp approval. *Commonwealth v. Emanuel*, 285 Pa.Super. 594, 428 A.2d 204 (1981); *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982). This practice of assuring that a specific body of persons upholds this safeguard is in compliance with procedural and statutory law. Pa.R.Crim.P. 225(b); 42 Pa.C.S.A. § 8931(e), (i).

Judgment of sentence affirmed.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

I concur in the majority's resolution of the first two issues raised by appellant. However, as to appellant's third issue, I am compelled to dissent to the views expressed by the majority regarding whether a district attorney's blanket designation of all Assistant District Attorneys as having the

authority to act in his stead comports with the requirements of the Judicial Code, 42 Pa.C.S.A. § 8931.

In relevant part, 42 Pa.C.S.A. § 8931 states the following: (d) Duties of prosecuting attorneys—... The district attorney or his designee shall have the duty to inquire into and make full examination of all facts and circumstances connected with each ... case to determine if the facts and circumstances warrant the filing of an information or informations premised upon the transcript...
(e) Disposition of cases—The district attorney shall sign all informations.

· · · · ·

(i) Definition—As used in this section "district attorney" includes ... any assistant district attorney whose authority to act for the district attorney under this section is evidenced by a written designation executed by the district attorney ... and filed with the clerk of the courts.

Pursuant to § 8931(i), a properly designated assistant district attorney may undertake the duty of the district attorney in reviewing and signing a criminal information. *See e.g. Commonwealth v. Dupree*, 290 Pa.Super. 202, 434 A.2d 201 (1981).

The following designation was on file at the clerk of the courts' office of Westmoreland County: [1]

### DESIGNATION OF AUTHORITY

I, Albert M. Nichols, District Attorney of Westmoreland County, Pennsylvania do hereby State and Aver under oath that all Assistant District Attorneys employed by me in the conduct of the said District Attorney's Office, have been, are now, and will continue to have full authority to act in my stead, and perform all of the duties of prosecuting attorneys and have authority to act for the District Attorney under Section 8931 of the Judicial Code, 42 Pa.C.S.A. 8931.

1. *See* Brief for Appellant, Exhibit B, Certified Copy of the Designation.

126

/S/ ALBERT M. NICHOLS
District Attorney of Westmoreland
County

(ACKNOWLEDGEMENT)

Appellant argues that a more specific designation of the persons empowered with the District Attorney's authority is required in order to comport with the intent of the Judicial Code. The majority denies appellant's contention as follows: "None of the case law advanced by the appellant supports a requirement for a specific, designation by name. So long as the designation, either general or specific is of record, an assistant district attorney's initials adjacent to his employer's stamped signature satisfy the promoted policy."

In my view, the Judicial Code requires something more than a mere blanket designation. The Judicial Code entrusts the district attorney or his designee with the power and ability to sanction the intrusion by the State into the lives of our citizenry without the benefit of the cherished institution of indictment by grand jury. In so doing, the Code has established the district attorney, or his designee, as the critical initial check point along the serious and solemn path down which a citizen must confront the prosecutorial force of the State. Ultimately, however, under § 8931(i), it is the district attorney alone who is responsible for this burden, not his designee. For pursuant to § 8931(i), it is only the district attorney who can delegate to a designee this authority. I cannot agree that the Judicial Code in ultimately placing this responsibility upon the district attorney and in permitting its delegation, intends that it should be bandied about so lightly as is the case with a blanket designation of authority to all assistant district attorneys. To allow the district attorney to delegate this responsibility in such a manner denigrates its importance. It is not an undue burden upon the district attorney for this court to require the delegation of authority to be performed with specificity, in recognition of the importance of this

awesome responsibility, and in so doing, to require the district attorney to evidence his judgment that every individual to be entrusted with this power is indeed qualified to exercise it.

Moreover, I believe that these concerns are not the only ones done injury by the views expressed in the majority opinion. By requiring that the district attorney's written designation be filed in the Clerk of Courts office, I believe § 8931(i) of the Judicial Code contemplates that defense counsel, as well as the public at large, would be able to ascertain from a review of the written designation specifically who had the authority to review informations and whether a person so empowered had done so. By permitting the district attorney to file a blanket designation, the majority imposes upon defense counsel the burden of having to determine whether the information was reviewed by a person who falls within the class of persons specified in the written delegation. I do not believe that the intent of the Judicial Code, as set forth above, is furthered by this unnecessary burden placed upon those who would examine a public record.

Although the majority's views decide only the ineffectiveness claim and do not become the substantive law of Pennsylvania,[2] I feel compelled to set forth my views to the contrary on this most important issue.

Accordingly, I would find this issue to be of arguable merit. I would therefore vacate judgment of sentence and remand for an evidentiary hearing to determine whether trial counsel had a reasonable basis for his failure to challenge the designation.

2. Because trial counsel failed to properly preserve the designation issue by raising it in post-verdict motions, we normally would not consider its merits on appeal. However, the improperly preserved claim may be considered solely for the purpose of resolving the question of ineffectiveness. *Commonwealth v. Sherard,* 483 Pa. 183 n. 5, 394 A.2d 971 n. 5 (1978); *Commonwealth v. Gaston,* 474 Pa. 218 n. 4, 378 A.2d 297 n. 4 (1977); *Commonwealth v. Hubbard,* 472 Pa. 259, 277, 372 A.2d 687 (1977).