J-S68002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JERRY GIPLE, | |
| Appellant | No. 940 EDA 2013 |

Appeal from the Judgment of Sentence entered March 21, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0001319-2012

BEFORE:  ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                          **FILED OCTOBER 17, 2014**

Jerry Giple ("Appellant") appeals from the judgment of sentence entered after the trial court convicted him of burglary, criminal trespass, and criminal mischief.[1]  We affirm.

The trial court recounted the evidence presented at trial as follows:

> On September 27, 2011, at approximately 10:00 p.m., Ms. Carmella Lemery (hereinafter "Ms. Lemery") and her (10) ten year old son were in the second floor bedroom of the residence, located at 241 East Albanus Street in Philadelphia, Pennsylvania, when they heard a loud "boom, boom, boom" sound.  At the time, Ms. Lemery and her son were the only individuals living in the residence.  After hearing the loud sound, Mrs. Lemery instructed her son to remain in the bedroom as she proceeded down the stairs, with her cellular telephone in hand, to investigate the origin of the sounds.  Ms. Lemery checked the front door but saw no one outside.  She then opened the interior

---

[1] 18 Pa.C.S.A. §§ 3502, 3503, and 3304 respectively.

door leading to the basement and saw [Appellant] inside her home at the bottom of the staircase. Upon seeing Ms. Lemery, [Appellant] said, "I'm sorry, I'm sorry, I am on dippers." Ms. Lemery immediately ordered [Appellant] to leave her house and informed him that she was calling the police. She then slammed the basement door to prevent [Appellant] from entering the other parts of her home.

Thereafter, Ms. Lemery proceeded upstairs to her bedroom, where her son was located, and dialed 911. After entering her bedroom she shut the bedroom door. Moments later, [Appellant] forced his way through the bedroom door by breaking the doorframe from the wall. As the bedroom door gave way, [Appellant] fell to the ground. While [Appellant] was on the ground, Ms. Lemery grabbed her son and jumped over [Appellant] to escape from the bedroom. She and her son then ran down the hall, down the stairs, and out of the front door of their residence, chased by [Appellant]. Once on the street, Ms. Lemery and her son ran together, up the block, while screaming for help with [Appellant] in pursuit. At some point, Ms. Lemery lost her balance and fell to the ground, when [Appellant] bypassed her and continued to chase her son, who was still fleeing. As [Appellant] pursued the boy, neighbors tackled [Appellant] to the ground and held him down until police officers arrived.

Officer Patrick Dooley was called to the Lemery residence at approximately 11:30 p.m. on September 27, 2011. As Officer Dooley pulled up to the 200 block of Albanus Street, he saw a large group of people in the street. Officer Dooley testified that he saw Ms. Lemery being chased by [Appellant], as well as a group of approximately five or six people chasing [Appellant]. Officer Dooley noted that as he was placing [Appellant] into his patrol car, [Appellant] was "completely belligerent," sweating, shaking, and "…[had] a lot of saliva coming out of his mouth."

Trial Court Opinion, 4/2/14, at 1-3 (citations to notes of testimony omitted).

After hearing this evidence, the trial court convicted Appellant of the aforementioned crimes. On March 21, 2013, the trial court sentenced Appellant to ten (10) to twenty (20) months of incarceration followed by

three (3) years of probation. Appellant filed a timely appeal. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for our review:

Was not the evidence insufficient to find beyond a reasonable doubt that [Appellant] had the intent to commit a crime when he entered the complainant's house and, therefore, was not the evidence insufficient to find [Appellant] guilty of burglary?

Appellant's Brief at 3.

In cases challenging the sufficiency of the evidence, we recognize:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012).

Appellant argues that the evidence was insufficient to support his burglary conviction because "the evidence was insufficient to find that [Appellant] intended to commit a crime at the moment he entered the

complainant's house."   Appellant's Brief at 9.   Appellant references his statement that he was "on dippers" as well as his "extreme physical and mental state", which suggested he "was under the influence of narcotics or suffering from mental illness, or both" to explain his "aberrant behavior after he entered the house." *Id*. at 14.  He maintains that "the bulk of evidence", "including that of his mental state, indicated an overall lack of planning … that militated against the lower court's conclusion that the evidence was sufficient to prove beyond a reasonable doubt that [Appellant] had formulated the intent to commit a crime before entering the complainant's house." *Id*. at 14-15 (underline in original).

At the time of the offense on September 27, 2011, a person was guilty of burglary: [2]

> **(a)**…if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S.A. § 3502.

In concluding that Appellant committed burglary, the trial court explained:

> To be found guilty of burglary, a defendant must enter a building or occupied structure with the intent to commit a crime therein, unless the premises are at the time open to the public,

---

[2] The statute was amended on July 5, 2012, effective September 4, 2012, to define the offense of burglary in four subsections.  18 Pa.C.S.A. § 3502(a).

or the defendant is licensed or privileged to enter. 18 Pa.C.S. § 3502. Generally, intent must be inferred solely from the defendant's conduct and statements at the time of the incident. *Commonwealth v. Madison*, 397 A.2d 818, 823 (Pa. Super. 1979). The determination of intent must be derived from a close scrutiny of all the facts and circumstances. *Id*. (Citing *Commonwealth v. Abdo*, 60 A.2d 419 (Pa. Super. 1948)). The intent to commit a crime must be formed when the defendant entered the building or residence in order to be found guilty of burglary. *Commonwealth v. Russell*, 460 A.2d 316, 321 (Pa. Super. 1983). The Commonwealth is not required to allege or prove what particular crime the defendant intended to commit after his forcible entry into a private residence. *Commonwealth v. Alston*, 651 A.2d 10 92, 1093 (Pa. Super. 1994).

A thorough review of the factual circumstances in the present case demonstrates [Appellant's] intent to commit a crime within the premises. In *Commonwealth v. Alston*, there was sufficient evidence the defendant possessed the intent to commit a crime where the defendant entered the basement of the home, ascended the stairs from the basement, and fled when confronted. 651 A.2d 1092 (Pa. Super. 1994). Similarly there was sufficient evidence of intent to commit a crime in *Commonwealth v. Willetts*, where late at night, the defendant attempted to break a padlock on a garage door, and fled when police arrived. 419 A.2d 1280, 1282 (Pa. Super. 1980). In the present case, [Appellant] entered the basement of the Lemery residence late at night. When confronted by the homeowner, Ms. Lemery, he refused to leave and chased her. Furthermore, [Appellant] continued to force his way through the home including the basement door and the upstairs bedroom door, chasing Ms. Lemery and her son. Both fled their home in fear of their safety and [Appellant] continued to pursue them until he was subdued by neighbors, who held [him] down until police officers arrived.

Trial Court Opinion, 4/2/14, at 4-5.

The trial court accurately states the applicable law in this case. It is well-settled that the intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. ***Commonwealth v.***

*Lambert*, 795 A.2d 1010, 1022 (Pa. Super. 2002) (*en banc*) (citation omitted). "While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of the crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based on upon the totality of the circumstances. The Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence." *Id*.

Here, our review of the record supports the trial court's factual recitation and analysis. Ms. Lemery testified that Appellant "broke into" her home through her basement door. N.T., 1/24/13, at 13. After hearing a "very loud" "boom, boom, boom" and encountering Appellant in her basement, Ms. Lemery ran upstairs and called 911, telling the dispatcher "that someone had broke into my home." *Id*. at 14, 18, 27. She testified that she "was terrified, not knowing what was going to happen to me. And my son was terrified." Id. at 24. Philadelphia Police Officer Patrick Dooley testified to receiving a radio call "to someone breaking in" at Ms. Lemery's residence. *Id*. at 33. Following the neighbors' chase of Appellant, who had chased Ms. Lemery and her son out of their home, Officer Dooley apprehended Appellant and placed him in custody. *Id*. at 34. The evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient for the trial court, as factfinder, to infer that Appellant

entered Ms. Lemery's residence with the intent to commit a crime. **Lambert, supra**. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2014