J-S15013-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNIE JAVON SWIFT | : | |
| | : | |
| Appellant | : | No. 886 WDA 2018 |

Appeal from the Judgment of Sentence July 25, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003235-2016

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    FILED APRIL 24, 2019

Appellant, Donnie Javon Swift, appeals from the aggregate judgment of sentence of 8.5 to 17 years of confinement, which was imposed after his jury trial convictions for:  one count each of criminal conspiracy to commit burglary – overnight accommodation and person is present, burglary – overnight accommodation and person is present, persons not to possess firearms, firearms not to be carried without a license, and possessing instrument of crime with intent to employ it criminally; and two counts each of terroristic threats with intent to terrorize another, simple assault ("SA"), and recklessly

_____

*   Retired Senior Judge assigned to the Superior Court.

endangering another person ("REAP").[1] We affirm Appellant's convictions, but we vacate the judgment of sentence and remand for resentencing.

The facts underlying this appeal are as follows. On the morning of July 15, 2016, eight-year-old J.T. and his sister, four-year-old H.J., were alone in the living room of their apartment on 2nd Street in Erie, Pennsylvania, after their mother, Ja.T. ("Mother"), had left to buy some groceries for their breakfast, when two men – whose faces were uncovered – entered the apartment, one of whom J.T. later identified as Appellant. N.T., 6/15/2017, at 26-28, 33-35; N.T., 6/16/2017, at 6; see also Trial Court Opinion ("TCO"), filed August 15, 2018, at 1-2.[2] Appellant and his co-conspirator,

_____

[1] 18 Pa.C.S. §§ 903, 3502(a)(1), 6105(a)(1), 6106(a)(1), 907(a), 2706(a)(1), 2701(a)(3), and 2705, respectively. Appellant was charged and the jury was instructed pursuant to the pre-2017 version of the burglary statute, 18 Pa.C.S. § 3502(a)(1) (effective Feb. 21, 2014 to Jan. 2, 2017) ("A person commits the offense of burglary if, with the intent to commit a crime therein, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present"). See Police Criminal Complaint, 8/1/2016, at 2 (Offense #2); Information, 11/28/2016, at 1 (Count Two), 3; N.T., 6/16/2017, at 239.

[2] The trial court opinion states: "When [J.T.] returned to the living room, he found two men present in the living room, one of whom was brandishing a gun." TCO at 2 (emphasis added) (citing N.T., 6/15/2017, at 28). However, pursuant to our review of the notes of testimony, there is nothing in J.T.'s trial testimony to suggest that he had ever left the living room in order to have "returned" to it and then to have "found two men" therein. Id. J.T. testified:

A. They came into our house.

Q. Where were you when they did that?

Antonio McGlory, then stole a camera from the living room, N.T., 6/15/2017, at 27-28, and "ransacked" Mother's bedroom, taking "a cologne set" and "other little miscellaneous things." N.T., 6/16/2017, at 11. "When they were finished," Appellant pointed a "gun at the children's heads" and "threatened to kill them if they told anyone about what happened." TCO at 2 (citing N.T., 6/15/2017, at 24, 29); see also N.T., 6/15/2017, at 28, 31 (J.T. clarified that "one" of the perpetrators "put guns to our heads").

Prior to trial, the trial court held a competency hearing for J.T. TCO at 12-13. At the hearing, J.T. knew his full name, how to spell his first name, his age, his birthday, his school's name, his grade, and his teacher's name. N.T., 4/6/2017, at 25-26. J.T. further testified that he knew the difference between the truth and a lie and responded correctly to example questions

_____

> A. The living room. . . .
>
> Q. What room in the house were you and [H.J.] in when they came in?
>
> A. The living room.
>
> N.T., 6/15/2017, at 26-27.
>
> Additionally, we find nothing in the notes of testimony specifying that either perpetrator was "brandishing a gun" when they entered the apartment. TCO at 2 (citing N.T., 6/15/2017, at 28). J.T. only mentions seeing a firearm after the perpetrators "stole stuff[.]" N.T., 6/15/2017, at 24 (J.T. testified, "Two guys came in our house and stole stuff and put guns to our heads and said we're going to kill you if you tell anyone"; when asked to repeat what he said "as loud into the mic as you can[,]" J.T. stated, "Two men came in my house, stole stuff and put guns to our head[s] and said they were going to kill us if we tell anyone."), 28 ("So, they stole stuff?"; "Yes."; "What else did they do?"; "Pulled – put guns to our heads.").

about colors. Id. at 26-27. He also stated that he understood that the truth was better than a lie, that the truth is "[g]ood[,]" and that a lie is "[b]ad" and "[w]rong." Id. He knew what a "promise" is, that he had to keep a promise, and that not keeping a promise is "[a] bad thing." Id. at 27-28. At the end, he promised to tell the truth. Id. at 28. Defense counsel chose not to cross-examine J.T. Id. The trial court determined that J.T. had the mental capacity to testify. Id.; TCO at 12-13.

Appellant was convicted of the aforementioned crimes on June 16, 2017. At Appellant's sentencing hearing on July 25, 2017, the Commonwealth presented the trial court with three different guideline sentencing forms each for conspiracy and for burglary: one with the deadly weapon used enhancement ("DWE Used"), one with the deadly weapon possessed enhancement ("DWE Possessed"),[3] and one with no sentencing enhancement listed.[4]

_____

[3] The Pennsylvania Sentencing Guidelines include two circumstances in which a deadly weapon enhancement applies: "[w]hen the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense," 204 Pa. Code § 303.10(a)(1) (emphasis added); or "[w]hen the court determines that the offender used a deadly weapon during the commission of the current conviction offense," id. § 303.10(a)(2) (emphasis added). A "deadly weapon" includes any loaded or unloaded firearm. Id. § 303.10(a)(1)(i), (2)(i). "The Deadly Weapon Enhancement shall apply to each conviction offense for which a deadly weapon is possessed or used." Id. § 303.10(a)(4).

[4] Neither party argued that no deadly weapon sentencing enhancement was applicable. See generally N.T., 7/25/2017. Accordingly, we need not

The guidelines for conspiracy with DWE Used were a mitigated range of 24 months, a standard range of 33 to 39 months, and an aggravated range of 48 months. The guidelines for conspiracy with DWE Possessed were a mitigated range of 18 months, a standard range of 27 to 33 months, and an aggravated range of 42 months.

The guidelines for burglary with DWE Used were a mitigated range of 42 months, a standard range of 54 to 66 months, and an aggravated range of 78 months. The guidelines for burglary with DWE Possessed were a mitigated range of 33 months, a standard range of 45 to 57 months, and an aggravated range of 69 months.

Appellant contended that DWE Possessed was proper, instead of DWE Used, "as no one was injured, and [there were] no allegations of anyone being injured." N.T., 7/25/2017, at 3; see also id. at 4, 7-8. The Commonwealth "strongly disagree[d,]" arguing that DWE Used should be applied. Id. at 10-11. The trial court agreed with the Commonwealth and applied DWE Used to both counts. Id. at 21. The court sentenced Appellant to 33 to 66 months for conspiracy and 54 to 108 months for burglary. Id. at 21-22.

Also at sentencing, the Commonwealth initially "concede[d]" that SA merged with REAP for sentencing purposes but then changed its position. Id. at 12-13. The trial court ordered separate sentences on each count of SA and

_____

address whether the Commonwealth presented evidence that Appellant possessed a firearm when he entered the victims' apartment.

REAP – 12 to 24 months for each count of SA and 9 to 18 months for each count of REAP. Id. at 21-22.

Appellant's aggregate sentence on all counts was 102 to 204 months or 8.5 to 17 years. Id. at 23. The trial court also entered a written sentencing order. Sentencing Order, 7/25/2017.

On August 4, 2017, Appellant filed a motion for reduction of sentence, which the trial court denied on August 10, 2017. On October 13, 2017, Appellant, pro se, filed a petition pursuant to the Post Conviction Relief Act ("PCRA").[5] On November 13, 2017, the PCRA court ordered that Appellant's "rights to file Post-Sentence Motions and a Direct Appeal are reinstated nunc pro tunc" and that "[a]ny post-sentence motion must be filed within ten (10) days of the date of this order." Order, 11/13/2017, at ¶¶ 3-4.

After the trial court granted multiple extensions of time, Appellant filed a post-sentence motion on February 26, 2018, which included a motion for modification of sentence, again maintaining that the trial court should have applied DWE Possessed, instead of DWE Used, for conspiracy and burglary, and contending that the sentences for SA and REAP should have merged. Post-sentence Motion, 2/26/2018, at ¶¶ 1-2. The modification motion also noted a clerical error in the written sentencing order, compared to the sentences imposed during the sentencing hearing. Id. at ¶ 3. Additionally,

_____

[5] 42 Pa.C.S. §§ 9541–9546.

the post-sentence motion included a motion for a new trial and a motion for judgment of acquittal. Id. at ¶¶ 4-6.

On May 17, 2018, the trial court entered orders correcting the clerical error in the original written sentencing order but otherwise denying the post-sentence motion. On June 15, 2018, Appellant filed a timely notice of appeal.[6]

Appellant presents the following issues for our review:

> 1. Did the Commonwealth present insufficient evidence on both counts of [REAP] where the Commonwealth failed to demonstrate that Appellant had an actual present ability to inflict harm?
>
> 2. Did the trial court commit an abuse of discretion and/or error of law when it determined that the minor child was competent to testify at trial?
>
> 3. Did the trial court abuse its discretion and/or err when it applied [DWE Used], rather than [DWE Possessed], for the offense[s] of conspiracy to commit burglary and burglary where the record revealed that the . . . elements of those offenses were committed prior to the use of any firearm?
>
> 4. Did the trial court err by imposing a separate sentence for the [SA] of the minors, J.T. and H.J. (Counts 8 and 9, respectively), where the Commonwealth appeared to concede th[at] those convictions merged with the convictions for [REAP] of the same minors (Counts 10 and 11)?

Appellant's Brief at 11 (trial court's answers and Appellant's suggested answers omitted).

_____

[6] Appellant filed a statement of errors complained of on appeal on July 9, 2018. The trial court entered its opinion on August 15, 2018.

Challenges to Appellant's Convictions

Appellant first challenges the sufficiency of the evidence to establish his convictions for REAP. Id. at 33-36.

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:
>
>> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>>
>> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

Commonwealth v. Izurieta, 171 A.3d 803, 806 (Pa. Super. 2017) (citations and internal brackets omitted).

REAP "requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." Commonwealth v. Shaw, 2019 PA Super 21, *5 (filed January 30, 2019).

Appellant specifically urges us to conclude that "[t]he Commonwealth cannot establish that Appellant recklessly placed the children in actual danger or that Appellant had the actual present ability to inflict harm upon them, where the Commonwealth failed to introduce any evidence that the gun was loaded or that other circumstances created actual danger." Appellant's Brief at 33.

The facts of the current case are analogous to those of Commonwealth v. Rivera, 503 A.2d 11 (Pa. Super. 1985) (en banc). In both the current matter and Rivera, the appellant broke into the victims' home, stole from them, and threatened them with death by shooting. Compare TCO at 1-2 with 503 A.2d at 12-13. The appellant in Rivera made an argument similar to Appellant's contention that, "because the evidence failed to disclose that the gun had been loaded, the evidence was insufficient to sustain his conviction for [REAP]." 503 A.2d at 12; compare id. with Appellant's Brief at 33. This Court rejected that argument, finding "[i]t was not necessary for the Commonwealth to show by direct evidence that a projectile was in the chamber of the gun." Rivera, 503 A.2d at 13. Thus, under Rivera, the Commonwealth did not need to establish that Appellant's firearm was loaded in order to prove REAP, and Appellant's first challenge is meritless.

Next, Appellant contends that the trial court should not have found J.T. competent to testify, because J.T.'s testimony was contradictory. Appellant's Brief at 36, 41.

"We review the trial court's competency finding for abuse of discretion." Commonwealth v. Tyrrell, 177 A.3d 947, 954 (Pa. Super. 2018).

> (a) General Rule.   Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> (b) Disqualification for Specific Defects.   A   person   is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

(1) is, or was, at any relevant time, incapable of perceiving accurately;

(2) is unable to express himself or herself so as to be understood either directly or through an interpreter;

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601. "[S]ince competency is the presumption, the moving party must carry the burden of overcoming that presumption." Commonwealth v. Delbridge, 855 A.2d 27, 40 (Pa. 2003).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned analysis of the Honorable Daniel J. Brabender, Jr., we conclude Appellant's second issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question:

> At the competency hearing, the child witness, [J.T.], was eight years old at the time of the offenses and nine years old at the time of Appellant's . . . trial. The Commonwealth established the following . . . :
>
> 1. The child knew his first and last name, his age and date of birth, the name of his teacher and the school he attends and that he is third grade. [N.T., 4/6/2017, at 25-26.]
>
> 2. The child testified he knew the difference between the truth and a lie and that it is bad to lie and it would be wrong to lie. [Id. at 26-27.]
>
> 3. The child testified he understood what a promise is and that he promised to tell the truth at the trial. [Id. at 27-28.]
>
> Defense counsel declined to conduct voir dire of the child. . . .

Defense counsel extensively cross-examined the child and his mother about possible taint of his identification testimony and his testimony regarding the events given at the Preliminary Hearing, the first trial and the second trial. The inconsistencies in the child's testimony and the inference of tainted identification testimony proffered by Appellant did not render the child incompetent to testify. The testimony elicited went to the child's credibility and was for the jury to determine as fact finders.

There was no error and/or abuse of discretion in finding the child, [J.T.], competent to testify.

TCO at 13-14. The trial court concluded that "[t]here was no indication [J.T.] lacked the mental capacity to perceive the nature of events he was called to testify about[,]" id. at 13, and, consequently, was not "incapable of perceiving accurately" pursuant to Pa.R.E. 601(b)(1). The trial court additionally found that J.T. could "communicate appropriate answers[,]" TCO at 13, and, ergo, was not "unable to express himself . . . as to be understood . . . directly" under Pa.R.E. 601(b)(2). The trial court's finding that J.T. knew his full name, age, date of birth, and grade and his teacher's and school's names, TCO at 13 (citing N.T., 4/6/2017, at 25-26), established that J.T. did not "ha[ve] an impaired memory." Pa.R.E. 601(b)(3). Lastly, the trial court held that J.T. "demonstrated an ability to understand the questions posed[,]" "an ability to distinguish fact from fantasy[,] an ability to tell the truth[,] and the importance of telling the truth[,]" TCO at 13; all of these findings show that J.T. did "sufficiently understand the duty to tell the truth[.]" Pa.R.E. 601(b)(4).

Accordingly, we find no abuse of discretion in the trial court's decision that J.T. was competent to testify and that Appellant had not met the burden

to overcome the presumption of competency. See Pa.R.E. 601(b); Delbridge, 855 A.2d at 40; Tyrrell, 177 A.3d at 954; TCO at 12-14. Thus, we affirm Appellant's second claim on the basis of the trial court's opinion.

Challenges to Appellant's Sentence

Appellant's third challenge is that the trial court abused its discretion when it applied DWE Used instead of DWE Possessed when sentencing Appellant for burglary and conspiracy to commit burglary. Appellant's Brief at 43-48.

"This Court has held that a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing." Commonwealth v. Kneller, 999 A.2d 608, 613 (Pa. Super. 2010) (en banc).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Commonwealth v. Manivannan, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), reargument denied (July 7, 2018).

In the current case, Appellant filed a timely notice of appeal and preserved the issue both at sentencing and in a post-sentence motion.

- 12 -

Appellant's brief includes a concise statement pursuant to Pa.R.A.P. 2119(f), challenging the application of DWE Used, and thus does not contain a fatal defect. Appellant's Brief at 31-32. This Court has found that the application of the deadly weapon enhancement presents a substantial question for review. See Commonwealth v. Buterbaugh, 91 A.3d 1247, 1266 (Pa. Super. 2014) (en banc) (appellant presented a substantial question where he asserted that his vehicle was not a deadly weapon pursuant to the deadly weapon enhancement). Since Appellant's Pa.R.A.P. 2119(f) statement challenges the application of the deadly weapon enhancement, Appellant, like the appellant in Buterbaugh, has presented a substantial question. We therefore have jurisdiction to hear Appellant's challenge to the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Conte, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation omitted). "In conducting this review, we are guided by the statutory requirements of 42 Pa.C.S. § 9781(c) and (d)." Commonwealth v. Zeigler, 112 A.3d 656, 661 (Pa. Super. 2015) (citation omitted). Those statutes provide, in relevant part:

(c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously . . .

(d) Review of record.—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c)(1), (d).

This Court considered the appropriate application of DWE Used versus DWE Possessed to the sentence for a burglary conviction in Commonwealth v. Tavarez, 174 A.3d 7 (Pa. Super. 2017), reargument denied (Jan. 4, 2018), appeal denied, 189 A.3d 385 (Pa. 2018).[7]  In Tavarez, id. at 10, 13, the appellant, who pleaded guilty to burglary, "admitted that he possessed a firearm during the entire criminal episode[,]" including that he had a firearm on his person when he entered a residence with the intent to commit a crime therein.  He did not encounter anyone at the moment he entered the building, but, as he moved though the home, he came across a resident, at which point

_____

[7] The trial court in the current case did not address Tavarez in its opinion. See TCO at 6-8.

- 14 -

he "attempted to commit a robbery" and "used a firearm to threaten the victims[.]" Id. at 9-10. During sentencing, "the trial court applied the enhancement for 'use' of a deadly weapon to the burglary conviction." Id. at 11. On appeal, the appellant "contend[ed] that the trial court should have applied the deadly weapon 'possessed' enhancement, rather than the 'used' enhancement, to his burglary conviction." Id.

This Court agreed, id. at 10, explaining: "to establish use of a deadly weapon under this provision, the record must show that the defendant used the weapon to threaten or injure the victim while committing the particular offense." Id. at 11. This Court then considered the question of when the perpetrator commits the particular offense of burglary:

> Our Supreme Court has explained that the offense of burglary is complete at the moment of entry into an occupied structure with the intent to commit a crime therein:
>
>> The crime of wilfully and maliciously breaking and entering any building with intent to commit any felony therein is completed when the felon breaks into the building either actually, or constructively by fraud, conspiracy or threats, with the intent above named. . . . Whatever felony is committed in the building broken into is separate and distinct from the offense of breaking and entering into that building.
>
> Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102, 21 A.2d 920, 921–22 (1941)[.]

Id. at 12 (bolded emphasis added; italicized emphasis in original) (internal brackets and some additional internal emphasis omitted). See also Commonwealth v. Garrett, 323 A.2d 314, 315 n.2 (Pa. Super. 1974) ("the consummation or execution of the intent to commit the felony is not necessary

to complete the crime of burglary"); Commonwealth v. Procopio, 188 A.2d 773, 775 (Pa. Super. 1963) (crime that appellant intends to commit within a building is separate from the burglary and does not need to be completed in order to fulfill the elements of burglary; "[c]onsummation or execution of the intent to steal or to commit some other felony is not necessary to complete the offense" of burglary).

Applying this definition of burglary to the facts of Tavarez, this Court concluded that "Tavarez satisfied the elements of burglary before he 'used' a weapon" and that "the record [thus] did not establish Tavarez's 'use' of a firearm during the commission of the burglary under 204 Pa. Code § 303.10(a)(2)." 174 A.3d at 12-13. This Court continued:

> [T]he burglary was complete at the moment Tavarez unlawfully entered the residence with the intent to commit the crime of robbery therein. The facts placed on the record . . . established only that Tavarez possessed a firearm when he entered the residence; there was no showing that he used the firearm to gain entry into the residence or to threaten the victims while entering the residence.

Id. at 13. In other words, there was no evidence that the defendant utilized the firearm in any way until after he completed the burglary. See id. This Court concluded:

> [T]he record does not support a finding that he employed the firearm "in a way that threatened or injured" the victims "during the commission of the [burglary]." 204 Pa. Code § 303.10(a)(2) (emphasis added). Accordingly, we conclude that the trial court abused its discretion in applying the deadly weapon "used" enhancement rather than the "possessed" enhancement to Tavarez's burglary conviction.

Id. This Court hence vacated the judgment of sentence and remanded for resentencing. Id. at 11, 13 ("Thus, if 'the trial court erroneously calculates the starting point under the [G]uidelines,' we will vacate the judgment of sentence and remand for resentencing." (quoting Commonwealth v. Scullin, 607 A.2d 750, 754 (Pa. Super. 1992))).

The facts of the current action are analogous to those of Tavarez. Like the appellant in Tavarez, Appellant had a firearm on his person when he entered an occupied building with the intent to commit a crime[8] therein.

_____

[8] Although Appellant's criminal information identified the crime that Appellant intended to commit in the building as "theft," Information, 11/28/2016, at 1, the jury was instructed that Appellant had to have "the intent to commit certain crimes[,]" without specifying the intended crime(s). N.T., 6/16/2017, at 239 (trial court initially instructed that Appellant "entered that location with intent to commit the crime of burglary" but immediately remedied its error by stating, "entered that location with the intent to commit certain crimes"; the court then promptly confirmed with counsel that they found the burglary instruction acceptable). Cf. Commonwealth v. Wiltrout, 457 A.2d 520, 525 (Pa. Super. 1983) ("two separate forms of intent are implicit in this statutory definition" of burglary: "there must be the intent to enter the building without authority" and "the intent to commit a crime"; "where the prosecution specifies the crime that the accused intended to commit at entry, then it must prove the intent for the specific crime"). Albeit that there was testimony that objects were taken from the victims' home, N.T., 6/15/2017, at 27-28; N.T., 6/16/2017, at 11, Appellant was never charged with theft, robbery, or any related offenses. See generally Police Criminal Complaint, 8/1/2016; Information, 11/28/2016.

There was no direct evidence as to whether the crime that Appellant intended to commit after entering the building involved his deadly weapon. Arguably, a jury could infer that, by simply bringing the firearm, Appellant intended to use it as part of his planned crime inside the home. However, alternatively, a jury could infer that, since Appellant and McGlory did not conceal their faces and may have witnessed the adult in the house, Mother, leave to buy

- 17 -

Compare id. at 13 with TCO at 1-2. In both appeals, there was no evidence that the defendant displayed or otherwise utilized a firearm at the moment he entered the home, even though he later committed additional crimes with his firearm after being inside the residence for a brief period. Compare Tavarez, 174 A.3d at 9, with N.T., 6/15/2017, at 24, 27-28 and TCO at 2 (citing N.T., 6/15/2017, at 24, 29) ("[w]hen they were finished, Appellant put the gun to the children's heads" (emphasis added)).

Furthermore, in both, the trial court applied DWE Used instead of DWE Possessed to the sentence for burglary. Compare Tavarez, 174 A.3d at 11, with N.T., 7/25/2017, at 21-22. Appellant, like the defendant in Tavarez, argued that the trial court erred and should have applied DWE Possessed in lieu of DWE Used to his sentence for burglary. Compare 174 A.3d at 11 with N.T., 7/25/2017, at 3-4, 7-8.

Given the clear parallels between the current appeal and Tavarez, we must apply the same analysis as we did in Tavarez, 174 A.3d at 12-13, and, accordingly, we are compelled to find that Appellant satisfied the elements of

_____

groceries, they only burglarized the residence once they believed that it was empty and therefore had no intention of using Appellant's firearm on anyone as part of the crime that they intended to commit within the victims' home. See N.T., 6/15/2017, at 26 (Mother at store), 33 (Appellant and McGlory were not wearing hats, head gear, masks, scarves, or "anything on their faces"); N.T., 6/16/2017, at 6 (Mother at store).

burglary[9] before he "used" a weapon and that the record thereby did not establish Appellant's "use" of a firearm during the commission of the burglary under DWE Used, 204 Pa. Code § 303.10(a)(2). The burglary was complete

_____

[9] As noted above, the jury was instructed pursuant to the pre-2017 version of the burglary statute, N.T., 6/16/2017, at 239, which stated: "A person commits the offense of burglary if, with the intent to commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S. § 3502(a)(1) (effective Feb. 21, 2014, to Jan. 2, 2017).

The current version of Section 3502(a)(1) has two subsections:

> A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> > (1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;
> >
> > (ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S. § 3502(a)(1) (effective Jan. 3, 2017).

In this instant decision, we have only interpreted the application of the deadly weapon enhancements to burglary as it was defined pre-2017. We make no determination as to how the changes to the language of Section 3502(a)(1) will affect the application of either deadly weapon enhancement to a sentence for burglary, particularly in light of the additional language in subsection (a)(1)(i) requiring that "the person commits, attempts or threatens to commit a bodily injury crime therein[.]" 18 Pa.C.S. § 3502(a)(1)(i) (effective January 3, 2017) (emphasis added).

at the moment Appellant unlawfully entered the house with the intent to commit a crime therein. See N.T., 6/15/2017, at 24, 26-28, 31; Tavarez, 174 A.3d at 13. Thus, Appellant possessed a firearm when he entered the house; the record does not support a finding that Appellant used the firearm to gain entry into the residence or in a way that threatened or injured the victims while entering the residence during the commission of the burglary. See N.T., 6/15/2017, at 24, 26-28, 31; Tavarez, 174 A.3d at 11, 13. Consequently, we are constrained to hold that the trial court abused its discretion in applying DWE Used rather than DWE Possessed to Appellant's sentence for burglary. See Conte, 198 A.3d at 1176; Tavarez, at 174 A.3d at 13.

In the current action, the deadly weapon enhancement was also applied to Appellant's sentence for the related conspiracy to commit burglary.[10] "Conspiracy is established when the Commonwealth proves the defendant entered into an agreement to commit or aid in the commission of an unlawful act, there was a shared criminal intent, and an overt act was taken in furtherance of the conspiracy." Commonwealth v. McCoy, 69 A.3d 658, 664 (Pa. Super. 2013). The "overt act" taken in furtherance of a conspiracy to commit burglary can be entering a house without authorization. See

_____

[10] In Tavarez, 174 A.3d at 8, the appellant was convicted of conspiracy to commit burglary, but no deadly weapon enhancement appears to have been applied to that defendant's sentence for conspiracy.

Commonwealth v. Riley, 811 A.2d 610, 614, 616, 618, 621 (Pa. Super. 2002) (information alleged and trial court instructed jury that the overt act for conspiracy to commit burglary was the act of entering a house without authorization; evidence presented satisfied elements of conspiracy to commit burglary).[11]

In the current appeal, the conspiracy to commit burglary was consummated by the agreement between Appellant and McGlory and by their completion of the overt act of unlawfully entry into the victims' apartment. Thus, the record does not support a finding that a firearm was used by Appellant or McGlory in the commission of the conspiracy to commit burglary.

When a sentencing court "fails to begin its calculation of sentence from the correct starting point" in the sentencing guidelines, "this Court will remand for reconsideration of sentence." Commonwealth v. Solomon, 151 A.3d 672, 676 (Pa. Super. 2016) (citing Commonwealth v. Magnum, 654 A.2d 1146, 1150 (Pa. Super. 1995) (citing Scullin, 607 A.2d at 754; 42 Pa.C.S. § 9781(c)(1))).

As the trial court in the current case failed to begin its calculation of sentence for burglary and for conspiracy to commit burglary from the correct starting points in the sentencing guidelines, we must vacate Appellant's

_____

[11] In the current appeal, unlike in Riley, 811 A.2d at 614, 618, neither the information nor the jury instructions specified what Appellant's "overt act" was in furtherance of the conspiracy. Information, 11/28/2016, at 1 (Count One); N.T., 6/16/2017, at 236-38.

sentences for those counts and remand for resentencing. See Tavarez, at 174 A.3d at 13; Solomon, 151 A.3d at 676.

Since our vacatur of Appellant's sentences for burglary and conspiracy disrupt the trial court's sentencing scheme, we also vacate the sentences on all remaining counts and remand for resentencing on the entire judgment of sentence. See 42 Pa.C.S. § 9781(c)(1); Commonwealth v. Deshong, 850 A.2d 712, 714 (Pa. Super. 2004) (citing Commonwealth v. Goldhammer, 517 A.2d 1280 (Pa. 1986); Commonwealth v. Farone, 808 A.2d 580 (Pa. Super. 2002)) (when a disposition by an appellate court alters the sentencing scheme, the entire sentence should be vacated, and the matter remanded for resentencing).

Finally, Appellant insists that his "convictions for [SA] merge with the convictions for [REAP]." Appellant's Brief at 48.[12]

"When reviewing the legality of a sentence, our standard of review is de novo and our scope of review is plenary." Commonwealth v. Seskey, 170 A.3d 1105, 1107 (Pa. Super. 2017).

The trial court agrees with Appellant, stating:

The Commonwealth initially conceded that [SA] merges with [REAP] for sentencing purposes[. N.T., 7/25/2017, at 12-13.]

The Commonwealth then went on to cite Com[monwealth] v. Thomas, 879 A.2d 246 (Pa.Super. 2005), for the proposition that [SA] does not merge with [REAP]. However, the Commonwealth

_____

[12] Although we vacated all of Appellant's sentences pursuant to the previous claim, we still elect to address this remaining issue, in order to aid the trial court in resentencing Appellant.

is in error. The Thomas case does not support the Commonwealth's argument the crimes do not merge. The Superior Court in Thomas stated:

> In Commonwealth v. Cavanaugh, 278 Pa.Super. 542, 420 A.2d 674, 676 (1980), this Court held that [SA] is a lesser included offense of [REAP] and thus the two crimes merge for sentencing purposes. See also Commonwealth v. Klein, 795 A.2d 424, 430 (Pa.Super. 2002). In the present case, apparently on the same facts, the trial court sentenced appellant to twelve to twenty-four months incarceration for [SA] and to a consecutive term of the same duration for [REAP]. Thus, appellant is correct that the trial court erred in sentencing him for both [SA] and [REAP]. We therefore remand for resentencing.

> . . . Id. at 263.

> Though concurrent sentences were imposed for each[, SA] should merge for sentencing purposes with each crime of [REAP].

TCO at 5-6. The Commonwealth concurs. Commonwealth's Brief at 7 ("Separate sentences are permitted for each victim. As to each victim, the charges of [SA] and [REAP] merge with each other[.]"). We likewise approve of the trial court's reasoning, and, thus, even if we had not already vacated all of Appellant's sentences pursuant to our holding for Appellant's third issue, we still would vacate Appellant's sentences for SA.

\* \* \*

Based on the foregoing, we affirm Appellant's convictions, but we vacate Appellant's judgment of sentence in its entirety and remand for resentencing.

A sentencing hearing must be held within 45 days of the return of the official record.[13]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2019

---

[13] Provided that all sentences are legal and that the trial court properly calculates and applies the sentencing guidelines, there is nothing in this decision to preclude the trial court from imposing the same sentencing scheme. We note that the trial court originally imposed maximum sentences for conspiracy and burglary that were above the aggravated range of the sentencing guidelines, irrespective of whether the guidelines with DWE Used or DWE Possessed were employed. See Commonwealth v. Smith, 186 A.3d 397, 403 n.8 (Pa. 2018) ("sentencing court always retains discretion to sentence outside the guideline range"); Magnum, 654 A.2d at 1150 ("While a court may depart from the guidelines, it must first consider a range which includes the mandatory deadly weapon enhancement.").